**UNITED STATES of America, Appellee,**

v.

**Charles WILLIAMS, et al., Defendants,**

**Claddis Arrington, Mary Ferguson, a/k/a "Mary Davis", a/k/a "Mary Johnson", and Brooks Gregory Davis, Defendants–Appellants.**

**Nos. 11 to 13, Dockets 89–1504 L, and 89–1522 to 89–1524.**

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1990.

Decided March 4, 1991.

Daniel C. Richman, Asst. U.S. Atty., S.D. N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Alexandra Rebay and Joan McPhee, Asst. U.S. Attys., New York City, of counsel), for appellee.

Richard B. Lind, New York City, for defendant-appellant Arrington.

Ruth M. Liebesman, New York City, for defendants-appellants Brooks Davis and Mary Ferguson, a/k/a Mary Davis, a/k/a Mary Johnson.

Before FEINBERG, VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Following a ten-week jury trial before Judge Griesa in the Southern District of New York, the above-named defendants-appellants were convicted of conspiring to violate the narcotics laws. 21 U.S.C. § 846. Brooks Davis was also convicted of engaging in a continuing criminal enterprise, 21 U.S.C. § 848(a), travelling in interstate commerce to further a narcotics enterprise, 18 U.S.C. § 1952, using a firearm in a drug trafficking crime, 18 U.S.C. § 924(c), and conspiring to intimidate a prospective witness, 18 U.S.C. § 371. Claddis Arrington was also convicted of distributing heroin, 21 U.S.C. § 841, and conspiring to intimidate a prospective witness, 18 U.S.C. § 371. We affirm all of the convictions.

Because none of the appellants argues that the proof was insufficient to support the jury's verdicts, an extensive recital of the facts is unnecessary. Briefly stated, the Government proved the existence of a large heroin and cocaine conspiracy operating principally around 143rd and 144th Streets in Harlem. The conspiracy was headed by Brooks Davis; Arrington was a street dealer; and Mary Davis was a supplier of customers and a procurer of drugs. We will elaborate on the above facts only as needed in the following discussion of the alleged errors that appellants urge as grounds for reversal.

## JURY SELECTION

Prior to sending a group of talesmen to Judge Griesa's courtroom, the jury clerk did not discuss the instant case in any manner except to inform the group that the trial was expected to last approximately six weeks. In accordance with instructions given him by Judge Griesa, the clerk inquired concerning possible hardship and excused two talesmen who said that service for that length of time would be a hardship. Relying principally upon the Supreme Court's subsequent decision in *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), appellants contend that this constituted prejudicial reversible error. We disagree.

In *Gomez*, the Court held that the voir dire of a jury had to be conducted by a judge rather than a magistrate. In support of this holding, the Court said that voir dire is a critical stage of the trial during which the defendant has a constitutional right to be present. *Id.* at 873, 109 S.Ct. at 2246. However, voir dire is not an issue in the instant case. Voir dire is conducted by the judge in the courtroom, not by the clerk in the central jury room. *See United States v. Wedalowski*, 572 F.2d 69, 74 (2d Cir.1978). In the instant case, the jury clerk excused two talesmen before they came to the courtroom.

This was not constitutionally forbidden. *See Fay v. New York*, 332 U.S. 261, 271, 67 S.Ct. 1613, 1619, 91 L.Ed. 2043 (1947). Neither was it forbidden by the Jury Selection

and Service Act of 1968, Pub.L. No. 90–274, 82 Stat. 53 (codified as amended at 28 U.S.C. §§ 1861–78 (1988)), either before or after the Act was amended. Although the Act as originally enacted did not provide expressly for pre-voir dire excuses by the jury commissioner or clerk, most courts that were asked to rule on the issue held that such excuses on hardship grounds were not improper. *See United States v. Ramirez,* 884 F.2d 1524, 1530 n. 6 (1st Cir.1989); *see also United States v. Calaway,* 524 F.2d 609, 615–16 (9th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976). However, to remove any uncertainty that might exist on this issue, Congress, in the Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100–702, 102 Stat. 4642, 4657, amended section 1866(c) to provide that "any person summoned for jury service may be (1) excused by the court, or by the clerk under supervision of the court if the court's jury selection plan so authorizes, upon a showing of undue hardship or extreme inconvenience, for such period as the court deems necessary...." The purpose of this change was "to promote administrative convenience and reduce unnecessary burdens placed upon the courts." H.R. Rep. No. 889, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.Code Cong. & Admin. News 5982, 6024. The report continues, "[t]o avoid needless challenges and to enhance administrative convenience, this section thus permits, although it does not require, courts to authorize clerks to grant temporary excuses." *Id.*

The Southern District's Amended Plan for the Random Selection of Grand and Petit Jurors, adopted pursuant to the Jury Selection and Service Act, provides that "any person summoned for jury service may be (1) excused by a district judge or the Clerk of Court upon a showing of undue hardship or extreme inconvenience, for such period as the judge or the Clerk of Court deems necessary...." The Plan differs from the Act in that it does not include the words "under supervision of the court." However, it is clear that the clerk here was in fact acting "under supervision of the court" since he was acting pursuant to

express instructions from the trial judge. We need not decide, therefore, whether the Act would permit a jury clerk to excuse talesmen prior to voir dire in the absence of such instructions, or whether the Southern District Plan is consistent with the Act in this respect.

Moreover, even if the excuse of the two jurors was error, it was harmless error. Although appellants argue that under *Gomez* harmless error analysis does not apply, the Court in *Gomez* relied on the distinction between voir dire, which is the jurors' "first introduction to the substantive factual and legal issues in a case," and a mere "administrative impanelment process." *Gomez, supra,* 490 U.S. at 874–75, 109 S.Ct. at 2246–47. As stated above, in this case the trial judge conducted the entire voir dire. Excusing two potential jurors without exposing any jurors to the substance of the case was part of the "administrative impanelment process," and any error in this procedure was harmless.

Appellants have made no contention or showing that the clerk discriminated in his selection of jurors or that as a result of his actions the panel from which the jury was drawn did not represent a cross section of the community. There is no merit in appellants' challenge to the clerk's action.

## DOUBLE JEOPARDY

■ On January 23, 1989 this court affirmed Judge Griesa's order denying appellants' motion to dismiss the charges against them on the ground of double jeopardy. *See United States v. Arrington,* 867 F.2d 122 (2d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). Since the facts appertaining to that ruling are set forth in our opinion, 867 F.2d at 123–30, they need not be recounted here. Appellant Mary Davis contends that the January 1989 decision should have no binding effect because the panel on that appeal was misled by a Government assertion that she would be tied directly to a plot to intimidate government witnesses. Appellant is mistaken; that panel was not misled.

We held that the defendants were not charged with conspiracy to bring about a single illegal result, but with a large scale narcotics distribution organization whose goals would be furthered by the silencing of witnesses. *Id.* at 130. Testimony concerning threats against such witnesses would be admissible against Mary Davis as a coconspirator in the continuing large scale conspiracy that encompassed the threats. *Id.* Because one of the alleged participants in the attempt to intimidate witnesses had acted as lead defense counsel at appellants' original trial, we held that a mistrial was manifestly necessary as to Mary Davis, as well as her coconspirators, a conclusion that in no way turned on a proffer of evidence tying her directly to witness intimidation. *Id.* Appellant has no valid claim of double jeopardy.

## THE PLEA ALLOCUTIONS

■ Four of the original defendants charged with drug conspiracy pleaded guilty. Keith Greene pleaded guilty on December 16, 1987; Henri Mitchell pleaded guilty on January 4, 1988. Anthony Walker pleaded guilty on March 7, 1988, and Clarence Dixon pleaded on March 16, 1988. All four were serving their sentences when the second trial took place.

These four men were linked to the charged narcotics conspiracy by considerable proof at trial and were mentioned frequently during the trial as participants in drug transactions. However, when the prosecutor contacted the attorneys for the four men to inquire about their clients' willingness to testify, he was informed that each of the clients would invoke his Fifth Amendment privilege if called as a witness. The Government then sought permission from the district court to use the prisoners' guilty plea allocutions as statements against interest pursuant to Fed.R.Evid. 804(b)(3). The district court accepted the prosecutor's representations as reliable and, after redacting all references to the named defendants, admitted the redacted allocutions. As a condition for such admission, the district court directed the Government to give defense counsel all statements made by the four absent prisoners in order to ensure full and fair impeachment of the absent declarants.

In admitting the redacted allocutions, the district court charged the jury as follows:

You may consider these statements as evidence of the activities of the people who made the statements, and that is relevant to the case. You may consider the evidence of these statements if you feel that they are probative in this direction, you may consider them on the issue of whether there was or was not a conspiracy to sell heroin and cocaine and whether the sales of heroin and cocaine went on at the locations contended by the government.

The question of whether any defendant here was a member of a conspiracy, whether any defendant here sold cocaine or heroin or both, that is an issue on which you will have to rely on other evidence. There is no evidence in these statements naming those defendants or any of them.

If you find the heroin sales and cocaine sales were going on in that location, and if you find that there was a conspiracy, then the question of whether any defendant here was engaging in selling, any defendant here was a member of such a conspiracy, that would have to be proved entirely by other evidence and there is nothing in here that proves that one way or the other.

In determining whether the admission of the guilty plea allocutions of these four former defendants constituted reversible error, a good starting point is the following statement taken from our decision in *United States v. Winley*, 638 F.2d 560, 562 (2d Cir.1981), *cert. denied*, 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982):

It is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court, particularly when, as here, the facts elicited in the allocution are buttressed by the testimony of other witnesses.

Because Judge Griesa himself conducted the allocutions of the four pleading defen-

dants, he had intimate knowledge of the allocutions' trustworthiness and their lack of susceptibility to challenge. He also was in the best position to rule on whether the pleading defendants were privileged from testifying concerning the subject matter of their statements. These factors must be borne in mind in deciding whether Judge Griesa departed from the requirements of Fed.R.Evid. 804 and, if so, whether the departure was harmless error.

Although the record is clear that Judge Griesa found the pleading defendants to be unavailable, appellants contend that Judge Griesa could not properly have made this ruling without these defendants having appeared before him to claim the privilege. Although in the ordinary case this would have been the preferred practice, personal appearance and claim of privilege were not the *sine qua non* of its grant in the instant case. In this respect, subdivisions (a)(1) and (a)(2) of Rule 804 must be distinguished. Subdivision (a)(2) identifies as "unavailable" a witness who persists in refusing to testify despite an order of the court to do so. This obviously contemplates presence of the witness in court. Subdivision (a)(1), on the other hand, identifies as "unavailable" a witness who is exempted by a court ruling on the ground of privilege. Such a ruling can be made, as in the instant case, with or without the witness being haled into court. *United States v. Kehm,* 799 F.2d 354, 361 (7th Cir.1986); *United States v. Georgia Waste Sys., Inc.,* 731 F.2d 1580, 1582 (11th Cir.1984); *United States v. Young Bros., Inc.,* 728 F.2d 682, 690–91 (5th Cir.), *cert. denied,* 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984); *United States v. Brainard,* 690 F.2d 1117, 1123–25 (4th Cir.1982), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985).

Appellants have suggested no reason why Judge Griesa should not have believed the representations of the attorneys for the incarcerated defendants concerning their clients' intentions to rely on their Fifth Amendment privileges. The law does not require the doing of a futile act. *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Casamento,* 887 F.2d 1141, 1169–70 (2d Cir.

1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). We conclude that both the prosecution and Judge Griesa acted reasonably and in good faith and that Judge Griesa's finding of unavailability based on his ruling concerning testimonial privilege has ample support in the record.

■ Assuming for the argument that Judge Griesa should have rejected the representations of counsel for the four incarcerated defendants and ordered the defendants brought into court from their respective correctional institutions in order for them to personally claim their privilege, we hold that under the circumstances of this case Judge Griesa's failure to do so was at most harmless error. It is clear beyond cavil that the doctrine of harmless error is applicable in cases involving the confrontation clause of the Sixth Amendment. *See Delaware v. Van Arsdall,* 475 U.S. 673, 680–84, 106 S.Ct. 1431, 1435–38, 89 L.Ed.2d 674 (1986). All references to appellants were redacted from the challenged allocutions. They were received only for the purpose of showing the existence of a conspiracy, not appellants' membership in it. In this respect, the testimony was substantially cumulative in nature. As one defense counsel stated to Judge Griesa, "The government certainly doesn't need this testimony to establish that a drug conspiracy existed." We agree. This being so, we are satisfied that, if the district court erred, the admitted evidence was neither crucial to the Government's case nor devastating to the defense and the error was harmless beyond a reasonable doubt. *See Casamento, supra,* 887 F.2d at 1179–80; *United States v. Southland Corp.,* 760 F.2d 1366, 1377 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985); *United States v. Wright,* 588 F.2d 31, 38 (2d Cir. 1978), *cert. denied,* 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979).

### THE *BRADY* CLAIM

■ As so often happens in cases of this sort, one of the Government witnesses, Demetrice Hamm, had an unsavory record. He was cross-examined at length about his own criminal activities, his mental health, and the money he had received from the

DEA and also from the Marshals Service as part of the United States Marshals Service Witness Program. As a participant in that program, Hamm was required to read and sign a "Memorandum of Understanding" concerning his responsibilities under the program and the protection he might expect. 18 U.S.C. § 3521(d); *see Franz v. United States*, 707 F.2d 582, 590–91 (D.C.Cir.1983).

Several days after the jury began its deliberations, the Government was informed by the Marshals Service that Hamm had indicated in his Memorandum of Understanding that he expected to receive a percentage of assets seized. The Memorandum also stated, however, that Hamm understood and acknowledged that any such promises would not be honored by the Marshals Service. Upon receipt of this information, the Government immediately informed defense counsel, who in turn requested that the information be given to the jury. The court demurred, however, stating that simply giving the form to the jury would not provide the jury with a fair indication of the facts surrounding its execution. The court also observed that information surrounding Hamm's expectation would have little import, significance, or weight. The parties consulted, however, and agreed that a stipulation might be sent to the jury which included statements that, if Hamm were called to testify, he would say that he "has no expectation, and never had any expectation, of receiving a percentage of assets seized in the case"; that "the government has no agreement with Hamm with respect to the receipt of seized assets, and has promised him no percentage"; that "Demetrice Hamm received nothing, and has not applied for anything." However, before this stipulation could be prepared and approved by Judge Griesa, the jury announced that a verdict had been reached.

Appellants do not challenge the accuracy of the stipulation. Instead, they argue the existence of a prejudicial *Brady* violation [*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ] almost as if the stipulated facts did not exist. They say that, "[i]f the stipulation had gone into [sic] the jury, the *Brady* violation would have been ameliorated, not rectified" (Davises'

Reply Brief at 22). This indicates a basic misunderstanding of *Brady*. *Brady* requires a reversal only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Petrillo*, 821 F.2d 85, 88–89 (2d Cir.1987) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.) and *id.* at 685, 105 S.Ct. at 3385 (White, J., concurring)). We are completely satisfied that, had all the facts been presented to the jury, there is no likelihood whatever that the defendants would not have been convicted.

## REMAINING ARGUMENTS

Most of appellants' remaining arguments deal with evidentiary rulings of the district court, which, as often has been stated, are to a large extent discretionary in nature. *See, e.g., United States v. Robinson*, 560 F.2d 507, 512–16 (2d Cir.1977) (en banc), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *Schiavone Constr. Co. v. County of Nassau*, 717 F.2d 747, 749 (2d Cir.1983). They do not merit detailed discussion. Statements of appellants' coconspirators, Williams, Joyner, Hamm, and Centano, made during the course of and in furtherance of the conspiracy in which they were engaged, were admissible. There was no improper limitation on the cross-examination of any of the Government witnesses. The district court properly excluded the hearsay within hearsay, or double hearsay, statement of Anthony Walker's mother, allegedly made to a confidential informant who in turn reported it to DEA Special Agent D'Erchia, because each part of the combined statements did not fall within an exception to the hearsay rule. *See United States v. Cruz*, 894 F.2d 41, 44 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 107, 112 L.Ed.2d 77 (1990); *Felice v. Long Island R.R. Co.*, 426 F.2d 192, 196–97 (2d Cir.), *cert. denied*, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970); *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir.1987); Fed.R.Evid. 805. The district court did not err in admitting pretrial consistent statements of Joyner and Hamm. *See United States v. Pierre*, 781 F.2d 329,

330–31 (2d Cir.1986). The district court's decision to preclude cross-examination of Harper and Hamm concerning arrests unrelated to the instant case was well within its discretion, and appellants have shown no prejudice as a result of the district court's rulings. The district court's missing witness instruction was substantially correct. *See United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir.1988). Proof of Arrington's sales of cocaine during 1985 and 1986 was admissible as evidence indicative of a conspiracy and his participation in it.

We have considered all of appellants' arguments, and the judgments of conviction are affirmed.