**Michael Christopher REYNOLDS, Appellant,**

v.

**BEACON WELL SERVICES, INC., an Oklahoma corporation, successor by name change only to Beacon Hot Oil Company, Inc., an Oklahoma corporation, and Tri–State Insurance Company, an Oklahoma insurance company, Appellees.**

**No. 71095.**

Supreme Court of Oklahoma.

July 20, 1993.

---

Jack B. Sellers, Joe A. Moore, Jack B. Sellers Law Associates, Inc., Sapulpa, for appellant.

Brenda K. Penland, Tom E. Mullen, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellees.

LAVENDER, Vice Chief Justice.

We decide in this case the Legislature did not intend 20 O.S.1981, § 106.4 to be applicable to the proceeding where the general jury panel is qualified and excusals are made. That proceeding is a part of the administrative impanelment process, rather than being a judicial proceeding within the contemplation of § 106.4. Further, there is no requirement that excusals or exemptions from the general jury panel all be accomplished at any specific proceeding. Thus, in so far as appellant claims error under § 106.4, which provides that a refusal of a court to permit or require any statement to be taken down by a court reporter or transcribed after being taken down shall be deemed a denial of due process, his argument is without merit and

provides no basis for reversal of the jury verdict rendered against him.[1]

Appellant, Michael Christopher Reynolds (Reynolds) sued appellee, Beacon Well Services, Inc. (Beacon) in tort for damages allegedly arising from his premature birth. Reynolds claimed his pregnant mother, while her vehicle was at a stop, was rear-ended by a vehicle driven by a Beacon employee. Reynolds claims the accident caused his premature birth and certain physical and psychological problems associated with the prematurity.[2] Some weeks before trial appellant filed a motion to have a court reporter take down the initial qualification and excusals of the entire general jury panel.[3] The chief judge of the judicial district denied the motion.

On the day of trial appellant made a motion to quash the general jury panel because his request for a court reporter was denied. The trial court denied the motion. A petit jury was chosen, the matter was tried and verdict was rendered against appellant. He appealed claiming error in the denial of his motion to quash the general jury panel because his request to have a court reporter take down the qualifications and excusals was denied. The Court of Appeals ruled against him and affirmed. They did not, however, reach the question of whether § 106.4 was even applicable, instead grounding decision on the view no prejudice was shown based on a review of the transcript of *voir dire* which they determined showed the jurors who actually heard appellant's case were qualified. We granted certiorari and now hold § 106.4 is not applicable to the qualification and excusal proceeding for which appellant sought a court reporter.[4]

The parts of § 106.4 pertinent to our decision follow:

(a) The court reporter shall make a full reporting by means of stenographic hand, steno-mask notes, or a combination thereof, of all proceedings, including the statements of counsel and the court and the evidence, in trials and other judicial proceedings *to which he is assigned by the appointing judge unless excused by the judge who is trying the case with the consent of the parties to the action.....* A refusal of the court to permit or to require any statement to be taken down by the court reporter or transcribed after being taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Su-

---

1. We note appellant makes no challenge to the qualifications of any juror on the petit jury hearing his individual case.

2. The accident occurred in the 1960s. Reynolds, an adult, sued for himself.

3. The term general jury panel as we use it here is of legislative origin. It refers to the number of jurors that are determined by a court of record to be necessary for jury service in all the courts of record within a county for any particular jury term. 38 O.S.1981, § 20. Appellant's request for a court reporter indicated the proceeding he wished to have taken down was to take place on May 2, 1988 at 8:00 a.m. in the Oklahoma County District Court jury assembly room before the chief judge. His trial was scheduled to begin the same day at 9:00 a.m.

4. The Court of Appeals also ruled adversely to appellant on his claim the trial court should have directed a verdict in his favor on the issue of negligence. The adverse decision by the Court of Appeals on this issue was not challenged in the petition for certiorari. The only issue raised by appellant in his petition for certiorari concerns the court reporter denial. No other issue is, thus, before us. *Ford v. Ford,* 766 P.2d 950, 952, f.n. 1 (Okla.1988) (the only issues properly tendered for our review are the issues presented in the petition for certiorari). We also note from discussions occurring immediately before trial between counsel and the trial judge it appears appellant was of the view district courts in Oklahoma may not have been properly carrying out their role in qualifying general jury panels because of certain legislative changes in the qualifications. Appellant raised no such issue on appeal or in the petition for certiorari and as we have already said in note 1, *supra,* he does *not* claim any juror on the petit jury hearing his case was unqualified. His sole claim is based on the denial of a court reporter which he asserts is mandated upon request under § 106.4. We, thus, need not concern ourselves with any other issue than that presented by the petition for certiorari. We do finally note, however, appellant, through his attorney, turned down an offer from the trial judge of an opportunity to take the deposition of the jury room clerk who presumably would have been present during the qualification and excusal proceeding and involved in other aspects of the general jury impanelment process.

preme Court, or other appellate court, shall constitute a denial of due process of law..... *In any trial, hearing or proceeding, the judge before whom the matter is being heard may, unless objection is made by a party or counsel, order the proceedings electronically recorded.* A trial or proceedings may proceed without the necessity of a court reporter being present, unless there is objection by a party or counsel..... (emphasis added)

In *Funnell v. Cannon,* 577 P.2d 1287 (Okla.1978), we held the term judicial proceeding was not limited to evidentiary hearings, but the term included the statements of counsel and the court on a motion to strike, a general demurrer and a motion for bond reduction. We held, however, in *Matter of Braddy,* 611 P.2d 235 (Okla.1980), the term judicial proceeding within the contemplation of § 106.4 did not have unlimited scope and the term did not apply to administrative proceedings before the Department of Public Safety involving revocation of a driver's license. *Id.* at 237. Only when the administrative matter was appealed to a district court did it become a judicial proceeding within the contemplation of § 106.4. Our job here is to determine whether the Legislature intended for the qualification and excusal proceeding to fall within the dictates of § 106.4. We believe it did not.

In *Funnell* we defined a judicial proceeding within the contemplation of § 106.4 as any proceeding where judicial action is invoked and taken or any step taken in a court of justice in the prosecution or defense of an action. 577 P.2d at 1289. A judicial act is an act done by a member of the judicial department of government in construing the law or applying it to a particular set of facts presented for the determination of rights of the parties thereunder. *State ex rel. Tharel v. Brd. of Com'rs of Creek County,* 188 Okl. 184, 107 P.2d 542, 549 (1940). This latter definition of judicial act is consistent with our read-

ing of § 106.4 which speaks in terms of the court reporter taking down certain matters *unless excused by the judge trying the case with the consent of the parties to the action.* In other words, the provision itself refers to a particular case rather than a proceeding like the impanelment of the general jury panel which is merely the process used to summon jurors who will eventually hear the various cases being tried at a specific jury term. Thus, in our view the term judicial proceeding as used in § 106.4 only applies to those proceedings particularly associated with a specific case rather than the qualification of the general jury panel or excusals from the panel, which we hold are a part of the administrative impanelment process embodied in 38 O.S.1981, §§ 18–29, as amended. A general overview of the initial impanelment process is necessary to show the administrative character of that process.

No later than October 1st of each year the Commissioner of Public Safety provides the Administrative Director of the Courts (ADC) a list of persons residing in a particular county who are eighteen (18) years of age or older and hold valid driver's licenses or a current identification license from the Department of Public Safety. 38 O.S.Supp. 1987, § 18.[5] The ADC gives the list to the court clerks of the respective counties. *Id.* In November of each year, the sheriff (or a deputy), the secretary of the county election board (or a deputy) and the court clerk (or a deputy) meet at the courthouse to select from the list of qualified jurors for service in the district court for the ensuing year. *Id.* In 38 O.S.1981, § 18.1 the judge in charge of court administration may, by order, adopt a plan for the selection of qualified jurors for jury service with the aid of mechanical or electronic means and implement such plan upon approval by this Court. If a plan under § 18.1 has not been adopted the selection of jurors is accomplished through the jury wheel system. § 18.1(C).

---

**5.** Section 18 was amended in 1989 to add persons with a current identification license to the scheme. The change is not relevant to our discussion. The present statute may be found at 38 O.S.1991, § 18.

Generally, the jury wheel system provides that the names and addresses of the qualified jurors from the list above are written on cards and placed in a circular hollow wheel or drum made of steel or iron which is constructed so as to revolve freely on its axle and big enough to freely mix the cards placed therein. 38 O.S.1981, § 19. The wheel is kept secure by two separate locks one each retained by the sheriff and the court clerk. *Id.* In each county the judges of the court determine approximately how many jurors are necessary for each two week jury term and they order the drawing of such number of jurors from the jury wheel. 38 O.S.1981, § 20. The appropriate number of jurors is drawn from the wheel in open court by the sheriff and court clerk under the directions of the chief judge of the district court. 38 O.S.Supp. 1982, § 21. Those persons whose names are drawn are notified by mail at least ten (10) days prior to the required time for them to report for jury service. 38 O.S. 1981, § 23.[6] The general jury panel reports at the designated time for service and is under the general supervision of the presiding judge of the district. § 20. The jurors finally qualified must take an oath or affirmation as prescribed in 38 O.S.1985, § 20.1, which is administered by the chief judge of the district court, or during his absence or disability, by some other judge assigned to the district court of the county. *Id.*

The provisions in 38 O.S.1981, § 28 also provide that certain persons are not qualified to serve on juries, i.e. they are exempt from service. These include judges, sheriffs or their deputies, jailers or law enforcement officers (state or federal) having custody of prisoners, licensed attorneys engaged in the practice of law, persons convicted of a felony and not restored to their civil rights or legislators during session or when involved in state business. *Id.* Section 28 also provides that persons over the age of seventy (70) may be excused from service upon request, as well as persons where service would result in substantial hardship to the prospective juror. *Id.* Section 21 also grants to the judge handling the impanelment process the authority to excuse or discharge any person drawn and summoned as a juror, whenever, in his discretion, such action shall be deemed expedient. In the present case the chief judge of the district was the judge making the above determinations in regard to excusals or exemptions from jury service.

Our review of the above process convinces us it is administrative in nature, rather than judicial, as the latter term is used in § 106.4. Although we have never reached the issue, the United States Court of Appeals for the Second Circuit has squarely determined the impanelment process is administrative in nature. In *United States v. Williams*, 927 F.2d 95 (2nd Cir.1991) *cert. denied* —— U.S. ——, 112 S.Ct. 307, 116 L.Ed.2d 250 (1991), the Second Circuit, in ruling it was not error for a court clerk to excuse two (2) jurors from the general panel under the supervision of the district court prior to *voir dire*, recognized that the excusals were merely a part of the administrative impanelment process. *Id.* at 96–97. Thus, there was no constitutional mandate forbidding the clerk from making the excusals, rather than a district judge. *Id.* at 96. In so ruling *Williams* distinguished *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), where the Supreme Court held *voir dire* had to be conducted by a judge rather than a magistrate because *voir dire* is the jurors' first introduction to the substantive factual and legal issues in a case and it differs from the general administrative impanelment process. *Williams*, 927 F.2d at 97.

Although our statutory provisions as to excusals from service on the general jury panel require the court to make the excusals, while under the system in *Williams* the clerk was authorized to do so merely under supervision of the district court, this does not lessen the fact the process of qualifying the general jury panel and making excusals from that body is administra-

---

**6.** Section 23 was amended in 1988 in a manner not pertinent. The current provision may be found at 38 O.S.1991, § 23.

tive in character, rather than judicial. The process is one merely to select those jurors which will eventually hear the various cases, both criminal and civil, which may be set at a jury term, and it is not concerned with any particular case.

We also note from review of §§ 18–29 there is nothing in the statutory scheme mandating that all exemptions or excusals from service on the general jury panel must be made at one central proceeding. As a practical matter many exemptions or excusals requested prior to the reporting date of prospective jurors may be made by personal visits to the courthouse, telephone or mail and, likewise, may be authorized by the chief judge and then the decision transmitted to the summoned juror by telephone or mail or at the personal visit by a member of the court clerk's office. Although not expressly so stated in *Noland v. State,* 550 P.2d 958 (Okla.Crim.App.1976), one or more of these methods appears to have been used where the court clerk executed the orders of the district court in excusing or exempting certain jurors by informing them of the court's decision. *Id.* at 962. *See also United States v. Evans,* 526 F.2d 701, 704 (5th Cir.1976), *cert. denied* 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976), *rehearing denied* 429 U.S. 987, 97 S.Ct. 509, 50 L.Ed.2d 599 (1976) (persons excused from federal jury panel for reasons asserted in a phone call or personal visit to the clerk's office). Although many excusals may be made at the proceeding held after jurors not previously excused or exempted arrive at the jury assembly room and are there finally qualified and administered their oath or affirmation by the chief judge, we believe in the case of juror involvement it is not until *voir dire* examination that the selection process becomes a judicial proceeding within the meaning of § 106.4. Only at such time can it be said a particular case has become the focus of juror involvement at which time they are questioned by counsel and the judge trying the case to determine their fitness to act as jurors in a specific matter.[7]

7. Contrary to the dissent of my colleague Justice Wilson, the majority opinion does not hold due process protections do not attach during the administrative impanelment process or pre-*voir dire.* Such an issue is not before us, but instead whether 20 O.S.1981, § 106.4, as to having a court reporter take down judicial proceedings was meant by the Legislature to apply to the initial qualification and excusals of the entire general jury panel. Had some allegation or minimal showing been made by appellant the impanelment process itself resulted in a tainted jury in this matter due process protections may indeed have been implicated here. However, no such allegation or showing has been made and as we noted in note 1, *supra,* appellant makes no challenge to the qualifications of any juror on the petit jury hearing his individual case.

Further, the dissent mistakenly relies on the openness issue, which is also not before us here. As noted, appellant relies solely on a supposed violation of § 106.4. He raises no independent constitutional openness issue to have either the public or himself attend the initial qualification and excusal proceeding. In any event any reliance on *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) or *Press-Enterprise Co. v. Sup. Ct. of Cali.,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), is surely misplaced. *Richmond* held implicit in the 1st Amendment to the United States Constitution is a right in the public to attend criminal trials and absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public. *Press-Enterprise Co.,* ruled the guarantee of open criminal trials extends to *voir-dire* examination, which as noted in the text is the first event where it can be said a particular case has become the focus of juror involvement. Neither case remotely concerned the administrative impanelment process, a process so labeled by the United States Supreme Court in *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), when distinguishing it from *voir dire.*

The dissent's reliance on *Kansas City Southern Railway Co. v. Norwood,* 367 P.2d 722 (Okla.1961), is also misplaced. No one disputes a litigant to a case may challenge the administrative jury selection process. *Norwood,* the statutory scheme on selection of the general panel and numerous other cases make this quite clear. *Norwood,* however, concerned a challenge based on the acts or omissions of the county treasurer, assessor and sheriff, county clerk and court clerk in preparing an initial list of qualified jurors. The challenge concerned a situation dealing with the duties of these officers even before the general jury panel jurors arrive at the courthouse. Is the dissent saying a court reporter is statutorily required by § 106.4 to be present at every step of the administrative process? Surely not. As to the challenger of a general panel having the burden to show an irregularity of substance to quash the panel, this burden may be shown in many ways, one of which was offered to appellant here, to wit: taking the deposition of those involved. Appel-

Accordingly, in that we hold § 106.4 was not applicable to the proceeding for which appellant requested a court reporter there is no basis upon which to reverse the jury verdict and judgment of the trial court rendered in this case. For the above reasons the opinion of the Court of Appeals is **VACATED IN PART** and the judgment of the trial court is **AFFIRMED.**

HODGES, C.J., and HARGRAVE, SUMMERS and WATT, JJ., concur.

SIMMS, J., concur in part; dissent in part.

OPALA, ALMA WILSON and KAUGER, JJ., dissent.

ALMA WILSON, Justice, with whom OPALA and KAUGER, Justices, join, dissenting:

I cannot join in the majority's tacit approval of excluding a litigant from the initial orientation of a general jury panel by a chief judge of our district court. The First and Fourteenth Amendments to the Constitution of the United States guarantee access to judicial orientation of venire persons in our state courts. Open judicial proceedings assure fairness in our judicial system.[1] Because today's opinion has a chilling affect on constitutional due process and the openness of our courts, I must respectfully dissent.

This negligence action was docketed for jury trial. Weeks before the trial date, the plaintiff filed a written request with the assigned trial judge and the chief judge that a court reporter record the proceedings for the qualification of the jury array from which the members of the jury that would hear his case would be selected. The plaintiff agreed to pay for the court reporter services in advance and engaged a shorthand court reporter to record the qualifications proceeding. The trial judge directed plaintiff to present the request to the chief judge. The chief judge refused to allow the shorthand court reporter into the jury assembly room with or without the stenographic equipment. Upon assignment of the prospective jurors to the trial court presiding in this action but prior to voir dire, plaintiff moved to quash the jury panel asserting a deprivation of due process. The defense counsel joined plaintiff's motion. The motion to quash was overruled.

On certiorari, the plaintiff/appellant claims that the trial judge and the chief judge denied his request to record the initial proceedings conducted by the chief judge in the jury assembly room and thereby violated his constitutional and statutory due process rights. Plaintiff/appellant argues that " 'judicial action' was taken by Honorable Judge Cannon when he qualified the jury array and excused jurors, ex parte, after appellant had filed a written request for court reporter to take such proceedings. Such refusal was a denial of due

---

lant turned down an offer of the trial judge of an opportunity to take the deposition of the jury room clerk. *See* note 4, *supra.*

Finally, the dissent's argument the administrative impanelment process turns into a judicial proceeding the moment the members of the general panel take their oath ignores the practicalities of the situation and the statement in *United States v. Williams,* 927 F.2d 95 (2d Cir. 1991), relying on *Gomez, supra,* that prior to *voir dire,* the jurors' first introduction to the substantive factual and legal issues in a case, the impanelment process is administrative in character. The practicalities ignored are those cited in the text. Many excusals from the general jury panel are done by the jury room clerk upon directions from the judge supervising the panel and, in fact, they are accomplished prior to the jurors even reporting for duty, by telephone or mail. The dissent wholly ignores these practicalities.

1. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 570, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980). In *Press–Enterprize Co. v. Superior Court of Cal.,* 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984), finding constitutional infirmity in the closing of the jury selection process in a criminal prosecution, said:

> The open trial thus plays as important a role in the administration of justice today as it did for centuries before our separation from England. The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that **anyone** is free to attend gives assurance that established procedures are being followed and that deviations will become known."

process mandated by the Constitution of Oklahoma and the Constitution of the United States." Plaintiff/appellant further argues such refusal was a denial of due process mandated by the court-reporting statute, 20 O.S.1981, § 106.4 [2] and *Funnell v. Cannon*, 577 P.2d 1287 (Okla.1978).[3]

Upon review of the jury selection statutes,[4] the majority opinion concludes that pre-voir dire jury selection is administrative in nature because it is not directly related to a single pending action, while voir dire jury selection is judicial in nature because it is directly related to a single action. Hence the majority opinion holds that there is no due process protection during the administrative or pre-voir dire jury selection and that the court reporting statute does not reach the administrative pre-voir dire jury selection. First, I cannot accept the majority's finding that selection of members of the general jury panel as pro-spective jurors in plaintiff/appellant's negligence action is not directly related to the action. Second, although the majority's administrative/judicial distinction fits neatly into a narrow reading of 20 O.S.1991, § 106.4, it does not recognize the broad meaning of "judicial proceeding" set forth in *Funnell v. Cannon*,[5] nor does it recognize the role of the chief judge in the jury selection process as an essential component in our system of justice which must be open to the public, including plaintiff's shorthand court reporter, absent an overriding interest.[6]

The administrative jury selection process is controlled by statute. 38 O.S.1991, §§ 18 through 29.[7] Title 38 O.S.1991, § 29 expressly recognizes that a party litigant may challenge any irregularity in the administrative steps for the drawing, summoning or impaneling of prospective jurors. Section 29 provides in part:

2. Title 20 O.S.1981, § 106.4, amended by 1989 Okla.Sess.Laws ch. 39, § 1, increasing the fee for transcripts to $2.50 per page, and now codified as 20 O.S.1991, § 106.4, provides in part:

(a) The court reporter shall make a full reporting by means of stenographic hand, steno-mask or machine notes, or a combination thereof, of all proceedings, including the statements of counsel and the court and the evidence, in trials and other judicial proceedings to which he is assigned by the appointing judge who is trying the case with the consent of the parties to the action. Nothing herein contained shall be construed to authorize the certification of persons as certified shorthand reporters who rely exclusively upon the steno-mask for reporting judicial proceedings, except as provided by law. **A refusal of the court to permit or to require any statement to be taken down by the court reporter, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, or other appellate court, shall constitute a denial of due process....**

(b) Upon request of either party in a civil or criminal case the reporter shall transcribe the proceedings **in a trial or other judicial proceeding....**
[Emphasis added.]

3. In *Funnell,* this Court held that the denial of a record of argument on a motion to strike and a general demurrer constitutes a denial of due process under § 106.4. Rejecting a narrow reading of § 106.4, this Court reasoned:

To limit the right for the taking down by a court reporter to trial, or evidentiary hearings, would render the language "other judi-cial proceedings" idle and nugatory. [Footnote omitted.] A "judicial proceeding" cannot be limited to a trial or evidentiary hearing. It is correctly defined as "any proceeding wherein judicial action is invoked and taken"; or, "any step taken in a court of justice in the prosecution or defense of an action." [Footnote omitted.]

4. Title 38 O.S.1991, §§ 18 through 29.

5. See note 3, supra.

6. In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. at 580, 100 S.Ct. at 2829, the United States Supreme Court, in holding that the right of the public to attend criminal trials is implicit in the guarantees of the First Amendment, noted that "historically both civil and criminal trials have been presumptively open." *Richmond* extends the First Amendment protection of public access to all facets of the jury selection process. Under the First Amendment the public has access to the assembly of venire persons while they are being given orientation instructions by judicial offices. In this case, the chief judge's refusal to allow plaintiff/appellant's court reporter into the jury assembly room was contrary to the First Amendment guarantee of public access to the court.

7. The majority opinion summarizes the statutes regulating the administrative steps in selecting, summoning and impanelling the general panel of prospective jurors for each jury term. Accordingly, those statutes are not re-reviewed herein.

... Substantial compliance with the provisions of this Chapter, shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the **irregularity in drawing, and summoning or impaneling** the same resulted in depriving a party litigant of some substantial right; provided, however, that such irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause.

[Emphasis added.]

The right to challenge the administrative jury selection is afforded to litigants in civil actions as well as criminal actions.[8] In the *Kansas City Southern* case, the general jury panel was challenged on the basis that the list of qualified jurors taken from the tax lists in the county assessor's office was not prepared pursuant to 38 O.S.1951, §§ 18, et seq. This Court said:

To entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the illegality or wrong which is the basis of such challenge is such as to have caused the defendant to suffer material prejudice. *Taylor v. State*, 95 Okl.Cr. 98, 240 P.2d 803; *Houston v. State*, 63 Okl.Cr. 49, 72 P.2d 526.

The panel of jurors drawn from the jury wheel was available to defendant for examination. No showing was made that members of the panel were not qualified to serve as jurors or were incompetent to sit as jurors in the trial of the case. In the final analysis of defendant's contention the main fault urged is that the jury, upon consideration of the evidence, rendered a verdict for plaintiff in a very substantial sum. Defendant presents no substantial facts or argument that the procedure followed in the preparation of the jury list caused or contributed to an erroneous verdict or deprived the defendant of some substantial right.

Our conclusion on this aspect of this appeal should not be construed as approving irregularities in the preparation of the list of jurors by the county officials charged with that statutory duty. The procedure is set forth in clear language by the statutes. Any departure from this procedure is condemned and is being tolerated in this instance because of lack of proof of prejudice.

*Kansas City Southern*, 367 P.2d at 727.

In the recent case of *York v. Fields*, 846 P.2d 360 (Okla.1992), this Court implicitly recognized the right of litigants to challenge the administrative steps of jury selection. York challenged the jury panel as not representative of the entire county and that a majority of the panel members were associated is some manner with defendants or their attorneys. The trial court denied the motion and, ultimately, York dismissed the suit. The trial court awarded attorney fees in favor of the defendants for services to defend the jury panel challenge. This Court reversed the trial court, finding that the dismissal was not in bad faith, vexatious or oppressive, or stated differently, that the challenge to the jury panel was in good faith.

Inherent in the right to challenge the administrative jury selection process is the right to discover the process. That is, the process must be open to the litigants. Otherwise, a litigant's right to challenge the jury selection process is meaningless if the process is closed to the public. A careful reading of the applicable statutes reveals a legislative intent that the administrative steps in the jury selection process will be open to public scrutiny, except for the names of the persons to be summoned for service. These statutes further reveal a legislative intent that immediately upon the taking of the juror's oath, the organization and supervision of the general jury panel becomes a judicial function.

---

**8.** *Kansas City Southern Railway Company v. Norwood*, 367 P.2d 722 (Okla.1961). In addition to our statutes controlling jurors, our criminal procedure statutes, in specific terms, provide for challenges to the drawing, summoning and impaneling of jury panels. 22 O.S.1991, §§ 631, et seq.

As the majority opinion observes, § 21 of Title 38 requires the drawing of the names of prospective jurors to be summoned shall be done in open court, but that the names shall not be divulged and shall be sealed. Section 20 provides that the general jury panel shall report to the chief judge and that the chief judge shall **organize said juries and have immediate supervision and control of them.** Section 20.1 specifies the oath to be administered by the chief judge to each member of the general jury panel **when reporting for duty** and requires that the oath shall be maintained in the office of the court clerk **as a judicial record.** Section 26 provides that the sealed envelope containing the names of the those summoned for jury duty shall be opened after the jury has been impaneled.

In this case, the members of the general jury panel were instructed to report to a central jury assembly room. The jury clerk of the office of the court clerk was present in the jury assembly room. Presumably, the chief judge administered the statutory juror's oath to the members and caused those oaths to be filed with the court clerk. At that point, the general jury panel was impaneled and the administrative aspects of jury selection were concluded. At that point, the jury process should have been opened to the public.

Our statutes clearly place the general jury panel under judicial control and supervision. 38 O.S.1991, § 20. Although pre-voir dire, orientation of the general jury panel is conducted by the chief judge and thus it is judicial action. Where judicial action is taken, the proceeding is judicial. *Funnell v. Cannon,* 577 P.2d at 1289. The guarantees of trial by jury in our state and federal constitutions reflect a fundamental fear of unchecked judicial power. Trial by jury protects litigants from the arbitrary actions of a biased judge. *Duncan v. State of Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). Judicial power is unchecked where the chief judge denies public access to the judi-

cial orientation of the general jury panel and selection of the panel members for assignment to the various court rooms as prospective jurors in a civil or criminal case.

In this case, the chief judge's orientation comments to the general jury panel and assignment of panel members to the various courtrooms as prospective jurors in the civil and criminal cases docketed for jury trial were not accessible to public scrutiny. Presumably the chief judge followed the Rules for the Seventh Judicial District in assigning jurors to the various courtrooms.[9] However, it is the closed proceedings for excusing summoned jurors from service and for orientation and assignment of prospective jurors to individual cases by the chief judge at which plaintiff herein contends he had a right to be present and that the chief judge's denial of that right was a denial of due process. I agree.

That the chief judge is exercising judicial power when deciding whether a summoned juror should be excused from service or when supervising and controlling members of an impaneled general jury panel is consistent with Rule 14 of the Rules on Administration of Courts. 20 O.S.1991, ch. 1, app. 2. Rule 14 requires the chief judge in a county or the presiding judge in a judicial administrative district to hold at least one jury term each year, an annual disposition docket and at least one motion docket each month. The administrative nature of the chief judge's role in each of these duties extends only to the acts required to initiate those dockets or jury terms—setting the dates and notifying the court clerk of the dates for a jury term or disposition docket or motion docket. Other acts relating to those dockets are judicial and minimal, procedural due process must be afforded. *Heiman v. Atlantic Richfield Company,* 807 P.2d 257 (Okla.1991).

The majority's reliance upon *United States v. Williams,* 927 F.2d 95 (2nd Cir.

---

**9.** Rule 40 of the Rules for the Seventh Judicial District requires that the names of the members of the general panel be placed in a jury box and, upon request by a judge for a jury, as many names as is requested will be drawn from the box. It is noteworthy that Rule 40 provides for the chief judge to "impanel the jury in the jury assembly room or one of the court rooms."

1991) for its administrative/judicial distinction is misplaced. *United States v. Williams* stands for the proposition that irregularity in the administrative jury selection process pursuant to federal statute will be analyzed by the harmless error standard of *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). Both *Williams* and *Gomez* were concerned with authority—authority of the clerk and authority of the magistrate; neither was concerned with the due process or openness issue. In *Williams* the prospective jurors were assembled in a central jury room; the judge instructed the clerk to inform the group that the trial was expected to last for six weeks and to make inquiry into possible hardship; the clerk excused two jurors for hardship; and the defendant contended that this was reversible error. The Second Circuit found that district court plan, duly filed in accordance with the Jury Selection and Service Act of 1968,[10] permitted the clerk to excuse jurors without exposing any jurors to the substance of the case as part of the " 'administrative impanelment process' and any error in this procedure was harmless." [11] In *Gomez* the defendants challenged the statutory power, or lack thereof, of the U.S. Magistrate to conduct jury voir dire examination in a felony case. The United States Supreme Court found that the magistrate was without authority and rejected the harmless error analysis.

The federal law administrative/judicial distinction simply is inapposite to the instant case. Further, 20 O.S.1991, § 106.4 is not broad enough to accommodate the constitutional injury that plaintiff/appellant asserts—denial of access to the jury assembly room during the chief judge's orientation of the general jury panel and selection of panel members as prospective jurors in plaintiff/appellant's negligence action.[12] I would not deny litigants, nor the public in general, access to the judicial supervision and control of prospective jurors.

**10.** 28 U.S.C. §§ 1861–78 (1988).

**11.** *Williams,* 927 F.2d at 97.

**12.** The majority opinion, in note 7, finds no injury in denying plaintiff/appellant access to the jury assembly room because the chief judge offered to allow the taking of the deposition of the jury room clerk and because the plaintiff/appellant failed to show that the lack of access resulted in a tainted jury. The majority opinion fails to recognize the presumption of injury where there is a violation of a constitutional right. *Glasser v. United States,* 315 U.S. 60, 70–71, 62 S.Ct. 457, 465, 86 L.Ed. 680.