**UNITED STATES**

**v.**

**Ingrid ZAPATA, Defendant.**

**No. 02 CR. 1545(VM).**

United States District Court, S.D. New York.

Feb. 16, 2005.

Mark Alexander Racanelli, U.S. Attorney's Office, New York City, for Plaintiff.

Roger Bennet Adler, Roger B. Adler, P.C., New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Defendant Ingrid Zapata ("Zapata") moved *in limine* on February 14, 2005 to admit into evidence certain portions of the plea allocution transcript of Nestor Fabian Londono ("Londono").[1] The United States Attorney's Office for the Southern District of New York (the "Government") responded to Zapata's motion in court and by letter dated February 14, 2005 contesting the admissibility of the statement.

Zapata also has objected to the inclusion of a "Conscious Avoidance" charge in the Jury Instructions. Finally, Zapata has objected to the inclusion of language in the Jury Instruction concerning a defendant's liability for the quantity of drugs involved in a transaction in which he directly participates.

For the reasons set forth in the statement made by the Court on the record on February 15, 2005, as further elaborated upon in the Statement of the Court which is attached hereto and incorporated herein, the Court denies the Zapata's motion to admit the plea allocution to Londono. Accordingly, it is hereby

**ORDERED** that the motion of defendant Ingrid Zapata ("Zapata") to admit the plea allocution of Nestor Fabian Londono is DENIED; and it is further

**ORDERED** that the motion of Zapata to preclude the inclusion of a "Conscious Avoidance" charge in the Jury Instruction is DENIED; and it is further

**ORDERED** that the motion of Zapata to preclude the inclusion of language in the Jury Instruction concerning a defendant's liability for the quantity of drugs involved in a transaction in which he directly participates is DENIED.

**SO ORDERED.**

### Statement of the Court Regarding Motions *In Limine*

### February 15, 2005

### I. ADMISSIBILITY OF LONDONO'S PLEA ALLOCUTION

Yesterday, defendant Ingrid Zapata ("Zapata") moved to admit Nestor Fabian Londono's ("Londono") plea colloquy into evidence, assuming that Londono would assert his Fifth Amendment right against self-incrimination in response to questioning. In the plea colloquy, which took place before this Court on the record and under oath, Londono admitted to his involvement in the conspiracy but stated again that he did not inform either Carolina Rios or Zapata about the purpose of the conspiracy. The United States Attorney's Office for the Southern District of New York (the "Government") has opposed the motion.

---

1. Londono has indicated his unavailability as a witness in this case. His attorney has indicated to the Court by faxed letter to the United States Attorney's Office that Londono intends to invoke the Fifth Amendment if called to testify. The Court accepts Londono's attorney's statements regarding his client's intent to assert the Fifth Amendment as sufficient to invoke that privilege. *See United States v. Adderley*, 51 Fed.Appx. 69, 70, 2002 WL 31650166, at *1 (2d Cir.2002) ("[A]n attorney may inform the court of his client's intent to invoke the Fifth Amendment."); *United States v. Williams*, 927 F.2d 95, 99 (2d Cir.1991) ("Appellants have suggested no reason why Judge Griesa should not have believed the representations of the attorneys for the incarcerated defendants concerning their clients' intentions to rely on their Fifth Amendment privileges. The law does not require the doing of a futile act."); *United States v. Savoca*, 335 F.Supp.2d 385, 390 (S.D.N.Y.2004) ("A witness need not be physically brought into court to assert his or her Fifth Amendment privilege; the government's representation that the pleading defendant's lawyer has been contacted and that such attorney stated that his client would assert the Fifth Amendment privilege is sufficient" and citing *Williams* for this proposition).

Having reviewed Londono's allocution and the relevant law, the Court denies Zapata's motion to admit Londono's plea colloquy. There are three potential provisions of the Federal Rules of Evidence under which the colloquy might be admitted: Rule 804(b)(1), governing the admissibility of former testimony, Rule 804(b)(3), Statements Against Interest, and Rule 807, the Residual Hearsay Exception.

■ Admissibility of the colloquy pursuant to Rule 804(b)(1) is foreclosed by *United States v. Jackson*, 335 F.3d 170 (2d Cir.2003). In that case, the Second Circuit was presented with a situation closely analogous to the one facing the Court: a defendant sought to introduce a plea allocution of an alleged coconspirator witness who had pleaded guilty and was awaiting sentencing, where the witness's plea allocution contained arguably exculpatory testimony and where the witness had asserted his privilege against self-incrimination to avoid testifying at the defendant's trial. The Second Circuit concluded that, though the witness was unavailable to testify due to his assertion of Fifth Amendment rights, the allocution, which was being offered against the government, could not be admitted under Rule 804(b)(1) because the government lacked "an opportunity and similar motive to develop the [earlier] testimony by direct, cross, or redirect examination." *See id.* at 177–78. The court found that the government lacked sufficient opportunity to cross-examine the witness at his plea allocution because Federal Rule of Criminal Procedure 11 directs courts, rather than the government, to conduct plea colloquies. On the issue of motive, the court found that the government lacks sufficient motive to cross-examine a defendant at his plea allocution to provide assurance of the testimony's accuracy, since the sole purpose of a plea allocution is to ensure that the defendant's plea is entered knowingly, voluntarily, and grounded on a proper factual basis. As

was the case with the witness in *Jackson*, though Londono may be unavailable to testify, the Government lacked sufficient opportunity or motive to develop his plea allocution for that allocution to be admissible under Rule 804(b)(1).

■ With respect to Rule 804(b)(3), Statements Against Interest, the Court refers the parties to its earlier decision concluding that Londono's statement to the police was inadmissible under that Rule for various reasons, particularly the portion of the decision noting that Rule 804(b)(3) only supports the admission of the self-inculpatory portions of a hearsay statement under *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Because the portions of Londono's plea allocution that Zapata seeks to admit were not self-inculpatory, those portions of the allocution would not be admissible under Rule 804(b)(3). Additionally, the circumstances clearly do not indicate the trustworthiness of the exculpatory portions of the allocution such that it would be admissible under Rule 804(b)(3), even if the exculpatory portions of the statement did not have to be excised. Although Londono's statement at his plea allocution was under oath, the portion of the allocution that sought to exculpate Rios was directly contradicted by Rios's own testimony at this trial and her entry of a plea of guilty to the charges brought against her in this matter. Thus, the statement cannot be admitted under Rule 804(b)(3).

Finally, the Court declines to conclude that the residual exception, Rule 807, applies here. Here, as in the *Jackson* case, the Court concludes that Londono's allocution lacks "equivalent circumstantial guarantees of trustworthiness" required under Rule 807 because it lacks "corroborating circumstances indicating [its] trustworthi-

ness under Rule 804(b)(3)." 335 F.3d at 179.

## II. INCLUSION OF THE "CONSCIOUS AVOIDANCE" CHARGE

Zapata argued that the facts of this case did not support the inclusion of a "Conscious Avoidance" charge in the Jury Instructions. Second Circuit precedent is clear on when the court may give a "Conscious Avoidance" charge where the defendant is charged with conspiracy. In *United States v. Ferrarini*, 219 F.3d 145 (2d Cir.2000), the court held that a conscious avoidance charge may only be given if "(1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, ... and (2) the appropriate factual predicate for the charge exists, i.e., 'the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt ... . that [the defendant] was aware of a high probability [of the fact in dispute] and consciously avoided confirming the fact.'" *Id.* at 154 (alterations in original; internal citations omitted).

As to the first factor in the context of a conspiracy charge, the court noted that "[t]here are 'two aspects of knowledge involved in a conspiracy: 1) knowing participation or membership in the scheme charged and 2) some knowledge of the unlawful aims and objectives of the scheme.' ... Conscious avoidance may not be used to support a finding as to the former, i.e., intent to participate in a conspiracy, but it may be used to support a finding with respect to the latter, i.e., knowledge of the conspiracy's unlawful goals." *Id.* at 154–55 (internal citations omitted). In *Ferrarini*, the court found that "the jury was properly instructed that conscious avoidance could only be used to infer knowledge of the conspiracy's unlawful objectives, and not of intent to participate in the conspiracy." *Id.* at 155.

As to the second factor—"whether the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability" of the fact that the alleged criminal activities of the conspiracy were unlawful, that is that Zapata, in this case, "was aware of at least one of the conspiracy's allegedly unlawful objectives, and consciously avoided confirming that fact"—the court held that "conscious avoidance cannot be established when the factual context *should have apprised* [the defendant] of the unlawful nature of [her] conduct, ... and have instead required that the defendant have been shown to have *decided* not to learn the key fact." *Id.* at 156–57 (internal quotations and citations omitted). The court stated that in some circumstances the giving of a conscious avoidance charge where this factual predicate did not exist might constitute reversible error. In *Ferrarini*, however, the court found that the giving of the charge, even though the factual predicate for the charge was not established, was harmless error "because there was overwhelming evidence that [the defendant] actually knew of the [unlawful nature of the conspiracy] and the jury was properly instructed on actual knowledge." *Id.* at 157.

Zapata contends in her letter to the Court dated February 11, 2005 that the testimony in the record does not support a "Conscious Avoidance" charge and cites *United States v. Adeniji*, 31 F.3d 58, 62–64 (2d Cir.1994). Zapata's reliance on *Adeniji* is misplaced. Although the Second Circuit found that the charge was not warranted in *Adeniji*'s particular case, the court stated that

> [w]e often have upheld the use of conscious avoidance charges where a defendant concededly possessed an item, but denied knowledge of the illegal content or use of the item, *see, e.g., Boothe*, 994 F.2d at 69–70 (charge appropriate

where defendant who picked up cartons of paper for use in counterfeit operation denied knowledge of operation); *Rodriguez*, 983 F.2d at 458 (charge appropriate where defendant denied knowledge of four pounds of cocaine concealed in lining of suitcase that she allegedly purchased at flea market), or was present at an illegal transaction, but denied knowledge of the illegal nature of the meeting, *see, e.g., United States v. Mang Sun Wong*, 884 F.2d 1537, 1541–42 (2d Cir.1989) (evidence that defendant "remained at the periphery of the transaction" and received large sum of cash from co-defendant without instructions for disposal, coupled with defense that he lacked knowledge that a crime was being committed and had no part in it, justified charge), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

*Id.* at 62. Additionally, *Adeniji* did not concern a conspiracy charge.

The Government in its response by letter to the Court, dated February 10, 2005, references cases that follow the standard laid out in *Ferrarini*. The Government contends that the facts in this case—that Zapata has placed her knowledge of the unlawful nature of her flying money to Florida in issue, that the trips Zapata took to Florida were suspicious in their brevity and timing, and that the evidence shows that Zapata did not ask any questions about what she was participating in—establish the factual predicate necessary to give a conscious avoidance charge.

■ The Court agrees with the Government and denies Zapata's motion to preclude the addition of a "Conscious Avoidance" charge to the Jury Instructions in this case. First, Zapata has asserted a lack of knowledge of the unlawful nature of the actions in which she engaged, an element of the conspiracy charge against her. Second, the Court finds that the evidence

admitted in the case would amply support a rational juror finding beyond a reasonable doubt that Zapata was aware of the high probability that the actions in which she engaged were illegal, and that she consciously avoided confirming that fact. Zapata socialized extensively over a period of eight weeks with a group of men with great unexplained wealth, and she testified that she did not ask what line of business one of the men, Londono, was engaged in. The men gathered in her home and discussed "travajo," or "work,"—drug dealer's jargon for illegal narcotics trafficking—in her presence. She was asked by Londono to make two trips to Florida for extremely brief periods of time, a number of hours for each trip, and was asked to carry thousands of dollars in cash on those flights. Zapata and her cousin, Carolina Rios, on the second trip delivered the money that each carried to a strange man with whom they met on the street at night. Given these facts and other evidence presented in this case, the Court finds that a rational juror could find beyond a reasonable doubt that Zapata was aware of the high probability that she was facilitating a narcotics conspiracy and that she turned a blind eye to that probability.

## III. INCLUSION OF LANGUAGE IN THE JURY INSTRUCTION CONCERNING DRUG QUANTITY

■ Zapata raised issue with the following language contained in the Jury Instruction related to the Special Assessment on Drug Quantity:

> As long as the defendant personally participated in a direct way in a heroin transaction, she is then responsible for the entire quantity of heroin involved in the transaction, regardless of whether she knew, or could foresee, the quantity.

The Government objects to the alteration of this language and argues that this lan-

guage is a correct expression of the law under *United States v. Chalarca,* 95 F.3d 239, 243 (2d Cir.1996), and the cases following that decision.

The Court finds that the charge as stated is a correct statement of the law. *See, e.g., Chalarca,* 95 F.3d at 243 ("We therefore agree with the government that the quantity of drugs attributed to a defendant need not be foreseeable to .him when he personally participates, in a direct way, in a jointly undertaken drug transaction."). The court in *Chalarca* cited precedent from the Tenth and Seventh Circuits that supports the application of this principle in this case. In *United States v. Lockhart,* 37 F.3d 1451 (10th Cir.1994), for example, the defendant was found to be liable for the total amount of the cocaine involved in the transaction in which he was involved, regardless of whether the amount was foreseeable to him, because he participated directly in the transaction by driving his co-conspirator to a restaurant knowing that his co-conspirator was going to the restaurant to obtain cocaine. *Id.* at 1454. Because the charge in this case states that the quantity of drugs at issue in the conspiracy is only to be considered if the jury finds Zapata guilty beyond a reasonable doubt with respect to Count One, meaning that she was a knowing participant in the conspiracy, the charge is a correct statement of the law.