**UNITED STATES of America,**
**Appellee,**

v.

**Benny SMITH, also known as Bennie,**
**Defendant–Appellant.**

**Docket No. 98–1312.**

United States Court of Appeals,
Second Circuit.

Argued: March 24, 1999.

Decided: Dec. 2, 1999.

---

Leonard J. Levenson, New York, N.Y., for Defendant–Appellant.

Cari S. Robinson, Assistant United States Attorney, (Mary Jo White, United States Attorney, Southern District of New York, Dietrich L. Snell, Assistant United States Attorney, on the brief), New York, N.Y., for Appellee.

Before: PARKER and POOLER, Circuit Judges, and WEXLER, District Judge.*

Judge PARKER dissents in a separate opinion.

POOLER, Circuit Judge:

Benny Smith appeals from the judgment of the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge* ) convicting him after a seven-day jury trial of eleven counts of extortion, extortionate collection of money, and conspiracy to commit extortion in connection with his participation in a loansharking scheme that co-defendant Dennis De-Bernardis led.[1] Smith asks that we vacate

---

* The Honorable Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation.

1. Second superseding indictment S2 96 Cr. 600, filed in the Southern District of New York on February 18, 1997, charged Smith in Counts One and Two with conspiring to make and making extortionate extensions of credit in violation of 18 U.S.C. § 892(a). Counts Three through Seven charged Smith with using extortionate means to collect and attempt to collect extensions of credit from debtors, in violation of 18 U.S.C. § 894(a). Counts Eight through Eleven charged Smith with conspir-

his convictions on Counts 4, 6, 8 and 10 for improper venue because the payments were made in the Eastern District of New York rather than the Southern District. Appellant also challenges the sufficiency of the evidence, the admissibility of a co-conspirator's redacted plea allocution, the district court's refusal to give a "consciousness of innocence" charge, and the effectiveness of trial counsel. For the reasons that follow, we reject appellant's arguments and affirm the judgment of conviction in all respects.

## BACKGROUND

Smith and DeBernardis both are former members of the New York City Police Department. Smith met DeBernardis in the mid–1980s, when they both still worked for the police department, and began moonlighting as a security guard in DeBernardis' security business in the early 1990s. From 1993 through 1996, Smith also assisted DeBernardis in his loansharking operation. DeBernardis typically lent money at a weekly interest rate of ten percent. He forced victims to make interest payments each week until they could repay the full amount of principal. When borrowers could not make payments, DeBernardis or his associates threatened them with violence. Smith collected money from victims, helped lend funds, and extorted victims when they failed to repay their loans.

Four victims of the DeBernardis loansharking scheme testified at trial. Their testimony established that Smith collected money from victims on behalf of DeBernardis and used their fear of violence to intimidate them. Among other things, the victims testified that DeBernardis sometimes was in Manhattan when he perpetrated his extortion. Augustus Davis testi-fied that DeBernardis often called him from Manhattan or Long Island to say that he was on the way to Brooklyn to collect his money. Davis knew when DeBernardis was calling from Manhattan because the 212 area code appeared on his beeper. Diane Scott, who ran a barbecue restaurant in Brooklyn, testified that DeBernardis would sometimes call from Manhattan to say that he would be there to collect his money within twenty to thirty minutes. At times, DeBernardis called Scott to tell her that he was sending Smith to collect money from her.

At the conclusion of the government's case-in-chief, Smith moved for judgment of acquittal pursuant to Fed.R.Crim.P. 29, claiming that the government failed to establish venue in the Southern District with respect to Counts 4, 6, 8 and 10. Smith also argued there was insufficient evidence to convict him of the eleven counts against him because he was merely an "instrumentality" of DeBernardis and did not have the requisite mental state to be convicted. The district court denied the motion in all respects. After trial, Smith moved pursuant to Fed.R.Crim.P. 33 for a new trial, claiming ineffective assistance of counsel and government violations of the Jencks Act. The district court denied the motion. On June 2, 1998, Judge Jones sentenced Smith to 51 months imprisonment, two years supervised release and a special assessment of $500. Smith now appeals.

## DISCUSSION

### I. Venue

#### A. Background

Smith challenges his convictions on Counts 4, 6, 8 and 10, which relate to extortion involving victims Davis and

ing to commit, attempting and committing extortion in violation of 18 U.S.C. § 1951(a). Counts 2, 4–7, 10 and 11 also charged Smith with aiding and abetting the commission of substantive offenses in violation of 18 U.S.C. § 2. The indictment also charged co-defendant DeBernardis in 33 counts. DeBernardis pleaded guilty to 32 of the 33 counts on March 7, 1997. Co-defendant Anthony Monk was charged in two counts and stood trial along with Smith. Another individual named in the indictment, Nola Michael, remains a fugitive.

Scott. Smith contends that venue was improper in the Southern District because the alleged loans and payments took place in the Eastern District of New York, where the victims resided. The government responds that venue was proper in the Southern District because a conspiracy is a continuing offense which may be "prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). In addition, the government claims that extortionate activity charged under 18 U.S.C. §§ 892, 894, and 1951 may constitute a continuing offense where an ongoing plan of extortion encompasses multiple payments.

▉ Because it is not an element of the crime, the government bears the burden of proving venue by a preponderance of the evidence. *See United States v. Naranjo*, 14 F.3d 145, 146 (2d Cir.1994). We review the sufficiency of the evidence as to venue in the light most favorable to the government, crediting "every inference that could have been drawn in its favor." *See United States v. Rosa*, 17 F.3d 1531, 1542 (2d Cir.1994). The Sixth Amendment establishes that a federal defendant shall be tried in the "district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI. In addition, Fed.R.Crim.P. 18 provides that "[e]xcept as otherwise permitted . . . the prosecution shall be had in a district in which the offense was committed." Moreover, "when a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989). As discussed more fully below, the government may establish venue as to the challenged counts through 1) the acts of a coconspirator; 2) the acts of a principal where the defendant is charged as an aider and abettor; or 3) a continuing offense.

### B. Conspiracy

▉ We first consider Count 8, which charged Smith with conspiracy to commit

extortion of Scott in violation of 18 U.S.C. § 1951(a). In a conspiracy prosecution, "venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators." *Naranjo*, 14 F.3d at 147 (quotation and citation omitted). "The defendant need not have been present in the district, as long as an overt act in furtherance of the conspiracy occurred there." *Id.* Overt acts in furtherance of a conspiracy can include phone calls. *See id.* We specifically have held that phone calls from one district to another by themselves can establish venue in either district as long as the calls further the conspiracy. *See United States v. Friedman*, 998 F.2d 53, 57 (2d Cir.1993). In *Friedman*, defendant placed calls from Long Island to Manhattan, and venue was proper in the Southern District. *Id.* There is no reason why the opposite calling pattern should not also establish venue. The evidence at trial established that DeBernardis telephoned and "beeped" Scott from Manhattan to inform her that he was on his way to collect money she owed him. As a co-conspirator, appellant is liable for acts DeBernardis made in furtherance of the conspiracy. *See Naranjo*, 14 F.3d at 147. Therefore, we affirm Smith's conviction on Count 8.

### C. Aiding and Abetting

▉ In Counts 4, 6, and 10, Smith was charged with aiding and abetting substantive crimes. Because Smith was charged as an aider or abettor under 18 U.S.C. § 2, he was triable as a principal in the district where the substantive offense was committed. *See United States v. Delia*, 944 F.2d 1010, 1014 (2d Cir.1991). As this court pointed out in *United States v. Molina*, Title 18 U.S.C. § 2

abolished the differentials in punishment between an accessory before the fact and a principal. Under common law an aider and abettor had to be present at the site of the crime. An accessory before the fact is one who, though ab-

sent, procures, counsels or commands another to commit an unlawful act. 18 U.S.C. § 2(a) combines these two classifications, making each such defendant equally as guilty as the principal. Courts now indiscriminately refer to both as aiders and abettors. *United States v. Molina*, 581 F.2d 56, 61 n. 8 (2d Cir.1978). Moreover, aiding and abetting "does not constitute a discrete criminal offense but only serves as a more · particularized way of identifying 'persons involved.'" *United States v. Oates*, 560 F.2d 45, 54 (2d Cir.1977) (*quoting United States v. Campbell*, 426 F.2d 547, 553 (2d Cir.1970)). In fact, "when a person is charged with aiding and abetting the commission of a substantive offense, the 'crime charged' is ... the substantive offense itself." *United States v. Oates*, 560 F.2d at 55. To convict a defendant of aiding and abetting a substantive crime, the government must prove that "the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime." *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir.), *cert. denied*, 519 U.S. 869, 117 S.Ct. 183, 136 L.Ed.2d 122 (1996). Much like a conspiracy charge, in order to prove that a defendant aided and abetted a substantive crime, the government must prove that the defendant "joined and shared in the underlying criminal endeavor and that his efforts contributed to its success." *Id.*

█ Venue is proper where the defendant's accessorial acts were committed *or* where the underlying crime occurred. *See United States v. Bozza*, 365 F.2d 206, 221 (2d Cir.1966) (stating that "Congress seems to have been content with venue where the defendant's own accessorial acts were committed or where the crime occurred"). It is without question that DeBernardis committed some of the offense conduct in the Southern District of New York. Viewing the evidence in the light most favorable to the government, it is clear that Smith was an aider and abettor because he joined and contributed to the criminal endeavors of DeBernardis. Even if Smith committed all of his accessorial acts in the Eastern District of New York, Smith nevertheless would be triable in the Southern District because 18 U.S.C. § 2 alters the common law rule to provide for an *additional* venue where DeBernardis, the principal, acted. The Southern District was an additional rather than the exclusive venue for this prosecution. Depending on whether we consider Smith's accessorial acts or the acts of DeBernardis for venue purposes, Smith could be tried in *either* the Eastern or Southern Districts. Because the government proved that principal DeBernardis acted in the Southern District, the government was not required to prove that Smith also committed accessorial acts in the Southern District.

### 1. Count 10

█ Count 10 charged Smith with aiding and abetting extortion and with extorting money from Scott in violation of the Hobbs Act over a period of almost two years, from April 1994 through February 1996, in violation of 18 U.S.C. §§ 1951 and 2. In a substantive Hobbs Act prosecution, venue is "proper in any district where interstate commerce is affected or where the alleged acts took place." *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir.1990). There is no question that DeBernardis' scheme consisted of multiple acts that affected interstate commerce, and the acts charged in Count 10 concerned the collection of extensions of credit through extortionate means in both the Southern and Eastern Districts. *See* 18 U.S.C. § 894(a) (statutory definition of collection of extensions of credit by extortionate means). We know that DeBernardis committed extortionate acts in the Southern District when he placed telephone calls from Manhattan into Brooklyn. The issue before us, however, is whether Smith can be tried in the Southern District for extortionate acts that DeBernardis committed there. Scott testified that on eight or ten

times, DeBernardis sent Smith to collect payments on his behalf after first calling Scott. Moreover, the proof at trial clearly established that Smith engaged in extortionate collections within DeBernardis' overall scheme. As explained above, Smith as an aider and abettor is liable for the criminal acts of the principal, and this liability extends to establishing venue in the Southern District.

■ Furthermore, venue is proper because Count 10 was a continuing offense. Pursuant to 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Several courts have held that Hobbs Act and extortion crimes involving multiple payments are continuing offenses for purposes of statutes of limitations. *See United States Textiles, Inc. v. Anheuser–Busch Cos., Inc.,* 911 F.2d 1261, 1265 (7th Cir.1990); *United States v. Bucci,* 839 F.2d 825, 829–30 (1st Cir.1988); *United States v. Aliperti,* 867 F.Supp. 142, 147 (E.D.N.Y.1994). In those cases, a single extortionate act committed within the statute of limitations period was sufficient to make defendant liable for all acts comprising the single scheme, even where the additional acts took place beyond the statute of limitations. We hold that the same principle applies in the context of venue. As previously noted, although venue is grounded in the Sixth Amendment, it is not an element of the crime and the government need only establish venue by a preponderance of the evidence. Surely the location of a trial is a lesser consideration than the acts for which defendant must stand trial in the first place, and existing case law already opens the statute of limitations window to include all acts comprising an extortionate scheme. This holding does not contravene our recent decision in *United States v. Brennan,* 183 F.3d 139 (2d Cir.1999). *Brennan* concerned the mail fraud statute,

18 U.S.C. § 1341, rather than extortion under the Hobbs Act. However, read more broadly, *Brennan* stands for the proposition that prosecution should take place only in those districts in which an act occurs that the statute at issue proscribes. *See Brennan,* 183 F.3d at 147. In *Brennan,* venue in the Eastern District was improper because the mailings underlying each mail fraud conviction merely passed through the Eastern District subsequent to the illegal act of depositing and prior to the illegal act of receiving mail, both of which took place in other districts. *Brennan,* 183 F.3d at 146–47. In contrast, in this case, the defendants perpetrated the very acts proscribed by the statute in the Southern District of New York, thereby making venue proper there.

The government proved by a preponderance that DeBernardis and his aiders and abetters for nearly two years made multiple threats to Scott, collected many payments from her, and used the telephone across district lines to facilitate the collections. These individual acts comprised an entire, ongoing and continuous offense straddling both the Southern and Eastern Districts. Because the government charged Smith as an aider and abettor, he may be tried wherever the substantive offense was committed. We conclude, therefore, that the government properly tried Smith in the Southern District.

### 2. Counts 4 and 6

■ We consider whether the government proved venue with respect to Counts 4 and 6 of the indictment, which charged Smith with using extortionate means to collect and attempt to collect extensions of credit, as well as aiding and abetting these crimes, all in violation of 18 U.S.C. §§ 894 and 2. Counts 4 and 6 concern extortionate collections from Davis and Scott, respectively. The government proved by a preponderance that principal DeBernardis committed criminal acts in the Southern District. The government need not also prove venue with respect to the accessorial

acts individually because the aiding and abetting charge against Smith not only describes his involvement in the scheme but also provides an additional location where Smith can be tried. In other words, the government may try the accessory where the principal acted. *See United States v. Delia*, 944 F.2d at 1014. Accordingly, because DeBernardis committed acts within the Southern District and was convicted within the proper venue, venue also was proper with respect to accessory Smith.

Moreover, as discussed more fully above, the offense conduct charged in each count was a continuing offense because it encompassed weekly collections by extortionate means and continual threats over a period of more than one year. *See Aliperti*, 867 F.Supp. at 147. The offense was "not unitary but instead span[ned] space or time" so that section 3237(a) applied and permitted prosecution in any district in which the offense was begun, continued, or completed. *See Beech–Nut Nutrition Corp.*, 871 F.2d at 1188. We conclude that the government proved venue in the Southern District by a preponderance because the evidence established that DeBernardis' calls from Manhattan to Davis and Scott in Brooklyn were integral parts of the extortionate collection process. Finally, as with Count 10, the government charged Smith as an aider or abettor under 18 U.S.C. § 2 and could prosecute Smith in any district where a principal committed a substantive act. *See Delia*, 944 F.2d at 1014. Therefore, we affirm Smith's convictions on Counts 4 and 6.

## II. Remaining Contentions

■ Appellant's remaining contentions do not warrant extended discussion. Smith argues that the district court violated his Sixth Amendment right to confront witnesses when it admitted the redacted plea allocution of co-defendant DeBernardis into evidence. Smith claims the ruling was improper in light of the Supreme Court's decision in *Gray v. Maryland*, 523

U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). Because the redacted plea allocution mentioned other co-conspirators without naming them and Smith was the only co-conspirator on trial for conspiracy and extortion, appellant argues that the jury improperly may have inferred that DeBernardis named Smith in his plea allocution. It was within the district court's discretion to admit the plea allocution of a co-conspirator as a statement against the declarant's interest that the jury could consider as evidence of the existence and scope of the conspiracy. *See United States v. Williams*, 927 F.2d 95, 98–99 (2d Cir.1991). In addition, the plea allocution was not incriminating on its face because it did not directly implicate Smith. Therefore, we find no violation of *Gray*. Finally, the district court properly instructed the jury both at the time it admitted the plea allocution and at the end of the trial on the purposes for which the jury could consider it.

■ We also reject appellant's challenge to the sufficiency of the evidence. "A conviction challenged on sufficiency grounds will be affirmed if, viewing all the evidence in the light most favorable to the prosecution, a reviewing court finds that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir.1997) (quotation and citation omitted). Smith argues that the government failed to prove that he had the requisite specific intent to aid and abet DeBernardis' violation of 18 U.S.C. § 894(a)(1). Smith claims that he was merely an instrumentality of the loan-sharking operation and had no "desire to bring about the crimes charged." Based on our review of the record, we reject Smith's sufficiency claim. In *United States v. Scotti*, 47 F.3d 1237, 1244 (2d Cir.1995), we made clear that "[s]ection 894(a)(1) is ... not confined in its reach to those who directly threaten or commit acts of violence, but encompasses indirect participation in the use of extortionate

**386**

means." The government needs only prove that Smith's participation was "knowing," not that he possessed specific intent. *See id.* at 1245. A rational jury could conclude that Smith, a former New York City police officer, was more than an instrumentality of DeBernardis' scheme. Trial evidence showed that. Smith knew the terms of the loans, collected weekly interest payments and exploited victims' fear of DeBernardis.

 Appellant also argues that the district court deprived him of a fair trial when it refused to charge the jury regarding "consciousness of innocence." Smith maintains that he was entitled to the instruction because he denied any wrongdoing when the police offered him immunity in exchange for his cooperation. According to Smith, his failure to take advantage of the immunity offer demonstrates that he was innocent of wrongdoing. We review *de novo* the propriety of jury instructions. *See United States v. Abelis,* 146 F.3d 73, 82 (2d Cir.1998). Appellant bears the burden of showing both that the jury instruction he requested "accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced." *Id.* (quotations and citations omitted). In denying Smith's requested charge, the district court properly found that the testimony at trial did not support the language Smith proposed. Specifically, the record does not support Smith's claims that he was promised complete immunity from arrest or prosecution in exchange for his cooperation. Moreover, the district court gave defendant ample opportunity to elicit consciousness of innocence testimony and argue that theory to the jury during summation. Viewing the charge as a whole, we find that it addressed each element of the offenses and did not prejudice Smith.

 Finally, appellant identifies several areas in which he claims to have received ineffective assistance of trial counsel. In order to prevail on this claim, Smith must show "both (1) that his attor-ney's performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). As an initial matter, nearly all of the instances of ineffective assistance that Smith alleges "fall squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim." *United States v. Eisen,* 974 F.2d 246, 265 (2d Cir.1992) (internal quotations omitted). Trial counsel's decision not to examine Scott on the contents of a taped interview, not to challenge the admissibility of De-Bernardis's address book, and not to offer into evidence a card from DeBernardis' Rolodex were not unreasonable trial tactics. Similarly, counsel's decision not to call witnesses to testify about Smith's role in DeBernardis's security business cannot form the basis of a meritorious ineffective assistance claim. "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *Id.* at 265 (internal quotations omitted). Nor can Smith demonstrate the necessary prejudice. Smith has not shown that any of counsel's alleged miscues prevented the jury from considering evidence probative of his innocence. In contrast, the government presented ample evidence of Smith's guilt—evidence that included Smith's post-arrest statements and the testimony of Smith's victims. As a result, the district court did not err in finding that Smith failed to demonstrate a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the trial would have been different.

## CONCLUSION

We have examined all of appellant's contentions and find them to be without merit.

Therefore, we affirm the judgment of the district court.

PARKER, Circuit Judge, dissenting:

I join the majority opinion to the extent it affirms Smith's convictions on Counts 1–3, 5, 7–9, and 11. However, the record contains absolutely no evidence linking the crimes charged against Smith in Counts, 4, 6, and 10 to the Southern District of New York. Moreover, the legal constructs the majority employs to avoid the consequences of this absence of proof are at odds both with our prior case law and with constitutional venue requirements. As a result, I would reverse the judgment of conviction as to Counts, 4, 6, and 10 for improper venue.

Because, in my view, the majority decision disregards well-settled principles governing venue in criminal cases, it is worth restating the basic rules at the outset. Article III of the Constitution requires that "[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. This command is reinforced by the Sixth Amendment's requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Both the Supreme court and this court have recently confirmed that the locus delicti of the charged offense must be determined "from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 119 S.Ct. 1239, 1242, 143 L.Ed.2d 388 (1999)(internal quotations omitted); *see also United States v. Brennan*, 183 F.3d 139, 144–45 (2nd Cir.1999)(citing *Rodriguez–Moreno*). "in performing this inquiry, a court must initially identify the conduct constituting the offense ... and then discern the location of the commission of the criminal acts." *Rodriguez–Moreno*, 526 U.S. 275, 119 S.Ct. at 1242–43. Venue

must be established separately for each crime with which the defendant is charged. *See United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989). Finally, an aider and abettor may be tried either in the district in which the aiding and abetting took place, or in the district where the principal committed the underlying substantive offense. *See United States v. Delia*, 944 F.2d 1010, 1014 (2d Cir.1991).

As the above standards make clear, the initial focus of our venue inquiry is on the definitions of the specific crimes with which the defendant is charged. Section 894, which forms the basis of Smith's conviction in Counts 4 and 6, states: "Whoever knowingly participates in any way ... in the use of any extortionate means ... to collect ... any extension of credit" is guilty of the crime of extortionate collection. 18 U.S.C. § 894(a). Section 1951, which forms the basis of Smith's conviction on Count 10, states: "Whoever in any way or degree obstructs, delays, or affects commerce ... by robbery or extortion" is guilty of a Hobbs Act violation. 18 U.S.C. § 1951(a). both statutes, by their terms, outlaw individual acts of extortion, not schemes or patterns of extortion. Therefore, each act of extortion constitutes a separate violation of these statutes, and a separate crimes, even if the extortionate acts are part of the same extortionate scheme. *See United States v. Payseno*, 782 F.2d 832, 835–37 (9th Cir.1986)(each act of extortion is a separate offense under section 894(a)). As a result, DeBernardis committed a separate crime each time he used violence or the threat of violence to collect a payment, 18 U.S.C. § 894(a), or affected commerce through extortion, 18 U.S.C. § 1951(a). The same is true of Smith.

It is undisputed that Smith himself never took any action outside of the Eastern District of New York in connection with the specific crimes charged in Counts 4, 6, and 10. Thus, in order to prove that venue was proper in the Southern District of

New York as to those Counts, the government must prove either: (1) that the specific crimes of extortionate collection that Smith was charged with committing himself were begun, continued, or completed by DeBernardis in the Southern District; or (2) that Smith aided and abetted the specific crimes that DeBernardis committed, at least in part, through actions taken in the Southern District.

Through its silence, the majority concedes that the government failed to prove the first of these two scenarios true. The majority cites to no evidence that DeBernardis called Scott or Davis from Manhattan to tell them that Smith was on his way to collect a payment. The majority fails to cite this evidence for good reason: It does not exist in the record. The most that can be said is that there was proof that on some occasions DeBernardis made calls to Scott and Davis from Manhattan, but none of those calls was ever connected to collections Smith performed.

Nor did the government prove that Smith aided and abetted those specific crimes of extortion against Scott and Davis that DeBernardis committed, at least in part, by means of phone calls from Manhattan. In order to prove a defendant guilty of aiding and abetting, "[t]he government must … prove … that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime." *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir.1996). As the majority correctly points out, the government proved that DeBernardis committed individual crimes of extortion against Scott and Davis while in the Southern District. What the majority does not emphasize, however, is that there is absolutely no evidence that Smith even knew about, must less acted to advance, those particular crimes. And without evidence connecting Smith's Eastern District actions to DeBernardis's Southern District crimes, it cannot be said that Smith aided and abetted any crimes that occurred in the Southern District.

The majority attempts to avoid the consequences of these failures of proof in two ways. First, it relies on the fact that Smith's crimes were part of DeBernardis's "overall scheme," or set of "criminal endeavors," some of which included "offense conduct," in the Southern District. But, as noted above, section 894(a) and 1951(a) do not proscribe "schemes" or sets of "criminal endeavors"; they proscribe individual acts of extortion. While the fact that Smith contributed to DeBernardis's overall scheme was central to the government's successful effort to prove proper venue on the conspiracy charged in Count 8, it does not rove that Smith aided and abetted the individual substantive extortion offenses that DeBernardis committed in Manhattan. To find otherwise, as the majority appears to do, flies in the face of the heretofore established rule that even when venue is proper as to a conspiracy charge, the government must separately establish venue for each substantive crime committed in furtherance of that conspiracy. *See Beech–Nut Nutrition Corp.*, 871 F.2d at 1188–91; *see also United States v. Corona*, 34 F.3d 876, 878–91 (9th Cir.1994)(citing *Beech–Nut*).

Perhaps recognizing that the law requires proof that Smith committed or abetted a crime in the Southern District, rather than simply furthered an ill-defined scheme there, the majority next takes the unprecedented step of lumping all of the individual crimes of extortion committed by both DeBernardis and Smith into a single so-called "continuing offense" and charging Smith with it. As its sole support for this novel approach, the majority relies on a handful of decisions from other courts holding that multiple crimes of extortion that are part of the same scheme can be treated as a single offense for statute of limitations purposes.

But this case differs in several dispositive ways from those on which the majority relies. First and most obviously, the government is not simply joining many instances of extortion committed by the same defendant in order to ensure that the

full extent of that defendant's related wrongdoing does not go unprosecuted; it is attempting to join separate crimes committed by two principals in order to create a single crime that satisfies jurisdictional requirements. Until today, no reported decision by any court has so utilized the continuing crimes construct to confer venue where it would not otherwise exist.

Second, absent application of the majority's continuing offense theory, the government would not be precluded from punishing the individual instances of extortion that Smith committed outside of the Southern District; it would simply be required to prosecute them in the district in which they occurred. The question is not whether a proper venue exists, but where the proper venue exists.

Finally, and most importantly, application of the majority's definition of a continuing crime impairs Smith's constitutional right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The majority attempts to minimize the importance of this requirement by pointing out that, unlike the elements of a crime, venue need only be proved by a preponderance of the evidence. But I fail to see how this lower standard of proof in any way exempts the government from complying with the substantive venue standards that the Constitution does (twice) impose on it. In my view, the government should not be allowed to perform and end-run around this fundamental constitutional guarantee by amalgamating several district crimes committed by more than one individual into a single "continuing offense" for the purpose of establishing venue. The contrary rule the majority adopts is of questionable constitutionality, at best.

For these reasons, I respectfully dissent from the majority opinion to the extent it affirms the judgments of conviction on Counts, 4, 6, and 10.